**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JAMES MARTIN, ESAIAS BOONE, and WILLIE
FOSSETT, in her own behalf and on behalf of
DANTE FOSSETT, a minor,

        Plaintiffs,

v.        No. CIV 00-1379 BB/WWD

CITY OF ALBUQUERQUE and OFFICER TOM
SHOLTIS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of Plaintiffs' motion for summary judgment (Doc.21), and Defendants' cross-motion for summary judgment (Doc. 23). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Plaintiffs' motion will be granted in part and denied in part, and Defendants' motion will be denied in part and held in abeyance pending completion of briefing by the parties.

This case arises out of an incident in which Defendant Officer Sholtis ("Sholtis") entered a residence without a warrant, encountered Plaintiffs, and proceeded to restrain and then arrest Plaintiff Martin. Plaintiffs Boone and the Fossetts reside in the house in question, and Martin was a social guest lawfully in the residence at the time he was arrested. Charges were filed against Martin, but those charges were dismissed after an Albuquerque Metropolitan Court judge excluded the evidence that had been obtained following Sholtis' entry into the residence. Plaintiffs subsequently filed this civil rights lawsuit and have moved for summary judgment. Defendants oppose that motion, and have filed a cross-motion for summary judgment based on qualified immunity.

**Cross-Motion**

Plaintiffs declined to respond to Defendants' cross-motion for summary judgment, objecting to Defendants' "inclusion of a request for summary judgment in their response brief." Plaintiffs argued that "such a motion is not authorized under Federal Rules of Civil Procedure or under local rules." It appears, therefore, that Plaintiffs contend a cross-motion for summary judgment is prohibited in response to a motion for summary judgment filed by one party. This contention is without merit, and in fact the Court is at a loss to understand Plaintiffs' position. Filing a cross-motion for summary judgment is an accepted practice in this district and elsewhere around the country, as is apparent from the sheer number of reported decisions discussing cross-motions for summary judgment filed by parties.[1] Defendants properly filed a cross-motion for summary judgment (Doc. 23); then, Defendants included argument and evidence concerning that cross-motion in their response brief to Plaintiffs' initial motion. While Plaintiffs might have preferred that Defendants file two separate briefs, one responding to their motion and the other addressing the cross-motion, the Court sees no reason to require such a procedure. Plaintiffs were required to respond to Defendants' cross-motion for summary judgment, and did not do so. Under the local rules of this District, such failure to respond could be construed as consent to grant the motion. D.N.M.L.R. 7.5. However, it is evident that Plaintiffs oppose the motion, and it is the Court's practice to dispose of claims or cases on the merits rather than on the basis of procedural default. Therefore, should Plaintiffs wish to respond to the cross-motion for summary judgment, they are ordered to do so within ten days of the date this opinion and order is filed. Defendants may then file a reply to Plaintiffs' response,

---

[1] A Westlaw search resulted in at least 475 cases, in the Tenth Circuit alone, referring to cross-motions for summary judgment filed by the parties. As one example only, *see Camfield v. City of Oklahoma City*, 248 F.3d 1214 (10th Cir. 2001).

should they wish to do so, within ten days. Except as discussed below, the Court will not at this time address the issues raised in the cross-motion.

**Motion for Summary Judgment**

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will address the motion for summary judgment with these standards in mind.

Plaintiffs have requested summary judgment on two main issues: first, that Sholtis' entry into the home without a warrant was unconstitutional, and second, that Sholtis' seizure of Plaintiff Martin was also unconstitutional. In support of the first argument, Plaintiffs have raised two sub-contentions: (a) that collateral estoppel precludes Sholtis from re-litigating this issue; and (b) that the warrantless entry into the home was unconstitutional as a matter of law. For the reasons discussed below, it is necessary to address these issues separately as to Plaintiffs Boone and Fossett, who lived in the residence, and Plaintiff Martin, who was a social guest present in the residence.

3

**Boone and Fossett:** As Plaintiffs point out, it is black-letter law that a warrantless entry into a home is presumptively unconstitutional, absent exigent circumstances. *See United States v. Gay*, 240 F.3d 1222, 1226 (10th Cir. 2001); *Valdez v. McPheters*, 172 F.3d 1220, 1224 (10th Cir. 1999). Defendants agree, but argue that such exigent circumstances were present in this case. At a minimum, Defendants contend, a reasonable police officer could have believed that sufficient exigent circumstances existed to allow the warrantless entry into the home, and therefore Sholtis is entitled to qualified immunity.[2] This contention borders on the frivolous.

The relevant facts, viewed in the light most favorable to Defendants, are as follows: (1) Sholtis interviewed a victim of domestic violence, who had allegedly been assaulted in her vehicle by her boyfriend; (2) Sholtis asked the victim where her boyfriend, whose name was Bobby Washington, could be found, and the victim took Sholtis to Plaintiffs' residence; (3) the victim informed Sholtis that Washington always carried a firearm; (4) Sholtis sent the victim on her way, and approached Plaintiff's residence; (5) the door of the residence was slightly ajar, and Sholtis could hear voices from inside the residence; (6) Sholtis heard one male voice say "Yeah, then I slapped the bitch, I showed her;" (7) Sholtis believed Washington had made this statement, and felt he needed to "make contact" with the individuals inside the residence; (8) Sholtis rang the doorbell at least three times, but no one answered the door; and (9) Sholtis decided to enter the residence and did so, announcing his presence as an Albuquerque police officer. In sum, Sholtis entered a home, with no solid information indicating that Washington resided there, and with no warrant of any kind, in order to "make contact" with Washington because Washington had been accused of committing a crime.

---

[2]The Court recognizes that the qualified immunity question is part of the cross-motion for summary judgment, not the motion for summary judgment. However, the issue may be resolved as to the Boone and Fossett plaintiffs at this point, under the undisputed facts submitted by the parties. Therefore, the Court sees no reason to wait for Plaintiffs' response to decide this issue.

The above evidence clearly shows there were no exigent circumstances justifying an immediate, warrantless entry into the residence. The alleged victim of domestic violence was not inside, there were no sounds of conflict or impending violence emanating from the residence, and there was no reason to believe there was any danger of immediate violence. Defendants argue that Sholtis could have reasonably believed he needed to make contact with Washington to prevent him from harming the victim in the future. However, the possibility that an individual will commit an offense at some point in the future is not a sufficiently exigent circumstance to allow officers to enter a home without a warrant. *See, e.g., Garrison v. City of Cushing*, 1993 WL 332284 (10th Cir.) (reversing qualified immunity granted to officers; exigent circumstances means imminent danger of death or serious bodily harm, imminent danger of destruction of important property, response to an emergency, or hot pursuit of a fleeing felon; fact that individual arrested was known to have access to a handgun, and had threatened to kill ex-wife, did not constitute exigent circumstances justifying warrantless entry into the plaintiffs' home to arrest individual).

This is especially true because the residence was clearly not Washington's residence. Sholtis knew Washington was merely a third party potentially present in the home. Even if Sholtis had obtained an arrest warrant for Washington, he could not have constitutionally entered Plaintiffs' home without also obtaining a search warrant. *See Gay* (discussing *Steagald v. United States*, 451 U.S. 204 (1981), which held that absent exigent circumstances or consent, law enforcement officers cannot search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant). As noted above, despite Defendants' efforts to paint this case as one involving exigent circumstances, there is no evidence to support that claim. Sholtis was simply investigating an alleged instance of domestic violence, and wanted to "make contact" with the alleged offender. No reasonable police office could believe that this desire could justify a warrantless entry of a third

5

party's home, New Mexico's domestic violence statute requiring officers to be vigilant in protecting victims notwithstanding. *See Garrison; see also Howard v. Dickerson*, 34 F.3d 978, 982 (10th Cir. 1994) (qualified immunity would not protect officer who unlawfully entered home in order to make arrest, in violation of Fourth Amendment, even if state statute had authorized such action). Otherwise, any warrantless entry into a home would be lawful if the officer entering the home believed a suspect accused of committing a crime was located therein. Summary judgment will be granted to Plaintiffs Boone and Fossett on the warrantless entry question, and the Court will rule as a matter of law that their Fourth Amendment rights were violated by Sholtis' entry into their home.[3]

**Martin:** The issue with respect to Martin is quite different. Since he was not a resident of the Boone/Fossett home, there is a question as to whether he had a legitimate expectation of privacy in that home, so as to give him a constitutional cause of action based on the warrantless entry. The law is clear that if Martin had been an overnight guest in the home, he would have had a legitimate expectation of privacy there. *See Minnesota v. Olson*, 495 U.S. 91 (1990). The law is also clear that if Martin were merely temporarily in the home for a business or commercial purpose, such as packaging drugs for sale, he would not have a legitimate expectation of privacy there. *See Minnesota v. Carter*, 525 U.S. 83 (1998). This case, however, obviously lies between *Olson* and *Carter*, since Martin was a social guest rather than a commercial guest, but was not an overnight guest.

Prior to the *Carter* decision, some courts had held that a casual guest, who was not staying overnight, did not have a reasonable expectation of privacy in a third person's home. *See, e.g., United States v. Torres*, 1998 WL 823184 (1st Cir. 1998); *United States v. Maddox*, 944 F.2d 1223, 1234 (6th Cir.1991). Other courts had decided to the contrary, holding that an overnight stay was

---

[3]Due to the Court's resolution of this argument, the Court need not address the collateral-estoppel issue as to these Plaintiffs.

not required to confer a legitimate expectation of privacy upon a social guest. *See United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997). Since *Carter* was decided, several commentators have stated that, due to the Court's division in *Carter*, social guests now have a reasonable expectation of privacy in their hosts' homes, even if they are not overnight guests; several courts have indicated agreement with this assertion. *See, e.g.,* 5 Wayne R. LaFave, *Search and Seizure*, § 11.3 (2001 Pocket Part, p. 17) (pointing out that in *Carter,* three dissenters and one concurrence agreed there was a legitimate expectation of privacy on the part of the commercial guests, while another concurrence [by Justice Kennedy] agreed with the majority only because the guests were engaged in purely commercial activity and stated that "almost all social guests have a legitimate expectation of privacy...in the host's home," the majority thus agreeing that social guests have a reasonable expectation of privacy in a third person's residence); Leading Cases, 113 Harv.L.Rev. 265, 270 (1999) (also noting Justice Kennedy's concurrence, and stating that a majority of the Supreme Court would have decided *Carter* differently if the short-term visitors were present for social, instead of business, purposes); *United States v. Gamez-Orduno*, 235 F.3d 453, 459, fn. 8 (9th Cir. 2000) (noting that while overnight guest status is sufficient for Fourth Amendment protection, it may not be necessary, as a result of various dissents and concurrences in *Carter*); *State v. Ortiz*, 618 N.W.2d 556, 559-60 (Iowa 2000) (disagreeing with the district court's blanket assertion that guests at a party have no reasonable expectation of privacy in the host's home; discussing Justice Kennedy's concurrence); *Morton v. United States*, 734 A.2d 178, 180-82 (D.C.App. 1999) (holding that, under *Carter*, a non-overnight social guest has a reasonable expectation of privacy in the host's home); *but see United States v. Rodriguez-Lopez*, 1999 WL 109632 (9th Cir. 1999) (as a result of *Carter*, the ordinary guest, as opposed to an overnight guest, may not assert the Fourth Amendment to exclude evidence discovered in an illegal search of the host's home).

After reviewing *Carter* and the above authorities, the Court is of the opinion that Plaintiff Martin most likely had reasonable, and therefore protected, expectation of privacy in the home of Boone and Fossett. However, the more significant question is whether the law was clearly established, at the time Sholtis entered the residence, that a social guest such as Martin possessed a legitimate expectation of privacy in that residence. *See Taylor v. Meacham*, 82 F.3d 1556, 1559 (10th Cir. 1996) (To determine whether an officer is entitled to qualified immunity, a court must first determine whether the plaintiff has asserted the violation of a constitutional right at all, and then must decide whether that right was clearly established at the time of the incident).[4] In order for the law on an issue to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as the plaintiff maintains. *Foote v. Spiegel,* 118 F.3d 1416, 1424 (10th Cir.1997). As discussed above, before *Carter* there was a split of authority on the non-overnight-guest issue. After *Carter*, there is commentary in favor of Plaintiff Martin's position, and a few non-Circuit cases also support that position. However, at the Circuit level, it appears the only authorities on point are contradictory cases from the Ninth Circuit. There is no post-*Carter* authority from the Tenth Circuit. Furthermore, as of November 19, 1999, the date on which Sholtis entered the Boone/Fossett residence, several of the cases supporting Martin's position had not been decided. At this point, therefore, the Court is disposed toward holding that the law was not clearly established in Martin's favor at the time in question. However, to allow Plaintiffs an opportunity to address the question, if they wish, the Court will refrain at this time from deciding the issue.

---

[4]Again, the Court recognizes this is a qualified-immunity question raised by the cross-motion for summary judgment, and that Plaintiffs have not yet responded to that motion. However, the facts and law with respect to this question appear to be undisputed, and the Court will therefore preliminarily address it at this time. Should Plaintiffs wish to provide facts or law contradicting the Court's discussion, they remain free to do so in the brief the Court has authorized them to file.

As to Plaintiff Martin's collateral estoppel argument, the Court need only point out that the issue decided by the Metropolitan Court was only the question of whether a constitutional violation had occurred. As noted above, the Court is inclined to agree with that holding. However, the question raised in this case is different--assuming such a violation occurred, was the law clearly established at the time that Martin had a reasonable expectation of privacy. Since that issue is not the same as the issue of whether a violation occurred at all, it would not be appropriate to apply collateral estoppel to preclude Defendants from litigating this issue. *See Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) (one requirement for application of collateral estoppel is that issue previously decided be identical to issue presented in current case). Furthermore, the Tenth Circuit has held that a law enforcement officer is not in privity with the government for collateral-estoppel purposes, so that in a civil rights case against the officer, estoppel effect should not be given to a determination made in a prior criminal case. *McFarland v. Childress*, 212 F.3d 1178, 1185-86 (10th Cir. 2000). For that reason also, it would not be appropriate to apply collateral estoppel against Sholtis in this case.

**Seizure of Martin:** Martin has requested summary judgment on his claim of unlawful seizure of his person. The seizure occurred after Sholtis entered the residence, when Martin became "belligerent." Sholtis attempted to pat down Martin to search for weapons, and ended up having to take Martin "to the ground" due to Martin's refusal to cooperate. Sholtis justified the pat-down on his knowledge that: Bobby Washington always carried a firearm; there was marijuana smoke in the air and beer bottles on the table; and Martin was acting belligerent and hostile. Sholtis contends this combination presented an officer safety issue. Martin argues that the pat-down search was unreasonable, for several reasons. First, he maintains Sholtis put himself in the position of possible danger, if there was any possible danger, by unlawfully entering the house without a warrant. As to

9

Martin, however, as discussed above, Sholtis is most likely entitled to qualified immunity for his unlawful entry. Sholtis entered the house in order to make contact with a third party, Bobby Washington, who did not live at the residence. Martin, a non-resident third party, happened to be in the home at the time of the entry. Since the law was apparently not clearly established that a third-party social guest could claim the protection of the Fourth Amendment in the host's home at the time of the incident, Martin cannot overcome a claim of qualified immunity as to the seizure by simply pointing to the fact of Sholtis' unlawful warrantless entry into the residence.

Martin next maintains there was insufficient cause for a pat-down search, as Sholtis had no reasonable basis to believe Martin possessed a firearm. The Court finds the facts are disputed as to this question. Under *Terry v. Ohio*, 392 U.S. 1, 26-27 (1968), an officer may conduct a pat-down search for weapons if the officer has reason to believe he is dealing with an armed and dangerous individual. In this case, there is evidence that Sholtis smelled marijuana smoke when he entered the house, that there was loose marijuana on a table in the room where Martin was sitting, that there were also empty beer bottles on the table, and that Martin became belligerent and refused to obey some of Sholtis' commands. Also, Sholtis had been told by the victim that Bobby Washington always carried a Tech 9 firearm. This evidence gives rise to a factual dispute as to whether Sholtis thought that Martin might in fact be Bobby Washington, might be under the influence of alcohol and/or marijuana, and might have been justified in believing Martin could be dangerous to him or his partner. At a minimum, given the claim of qualified immunity, there is a genuine issue of fact as to whether a reasonable officer in Sholtis' position would have believed a pat-down search was warranted. Summary judgment cannot be granted to Martin on this issue at this time.

**Conclusion**

Based on the foregoing, summary judgment will be granted to Plaintiffs Boone and Fossett on the issue of the unlawful warrantless entry into their home. As to Plaintiff Martin, summary judgment will be denied at this time on all issues. A ruling on the cross-motion for summary judgment will be held in abeyance, except as to Plaintiffs Boone and Fossett, as to whom it will be denied.

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Plaintiffs' motion for summary judgment (Doc. 21) be, and hereby is, GRANTED in part and DENIED in part; and Defendants' motion for summary judgment based on qualified immunity be, and hereby is, held in abeyance pending further submissions from the parties.

Dated this 15th day of August, 2001.

BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiffs**:
Joseph P. Kennedy
420 Central Avenue S.W., Suite 250
Albuquerque, New Mexico 87102

**For Defendants**:
Stephanie M. Griffin
Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico 87103